UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff-Appellant,

v.

William COUCH, III and Lytle Ray Barrett and wife, Betty Lynn Barrett, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 7, 1982.

Permission to Appeal Denied by Supreme Court Dec. 20, 1982.

James M. Doran, Jr., Nashville, for plaintiff-appellant.

Frank M. Fly, Murfreesboro, for defendants-appellees Barrett, et ux.

William T. Sellers, Murfreesboro, for defendant-appellee Couch.

## OPINION

TODD, Presiding Judge, Middle Section.

This is a suit by United Services Automobile Association, an automobile liability insurer, for declaratory judgment as to its liability, if any, under an automobile liability policy issued to Mrs. Rebecca W. Couch, whose minor son, William Couch, III, was involved in a collision while operating a non-owned vehicle. The other defendants were parties injured in the collision. The Chancellor determined that plaintiff was obligated to defend, and plaintiff appealed.

It is conceded that the policy was in full force and effect at the time of the collision and that William Couch, III, was covered by the policy as an additional assured. The only issues are whether coverage was excluded under either of two provisions of the policy as follows:

We do not provide Liability Coverage:

   \*    \*    \*    \*    \*    \*

5. For any person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.

   \*    \*    \*    \*    \*    \*

10. For the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by or furnished or available for the regular use of any family member. However, this exclusion does not apply to you.

Appellant's first issue on appeal relies upon paragraph 10, above. The ground of this reliance is that, at the time of the collision in question, William Couch, III, was operating a 1965 Chevrolet owned by his employer, Robert A. Canterbury, owner of B & L Pizza Palace. This vehicle was, of course, not listed in the policy issued by plaintiff to Mrs. Rebecca W. Couch; but, as an additional insured, William Couch, III, was entitled to liability coverage while operating it unless coverage was excluded by paragraph 5 or 10 of the policy, above.

Appellant insists that paragraph 10 excludes coverage because the 1965 Chevrolet was "furnished or available for the regular use" of William W. Couch. The circumstances of the use of the 1965 Chevrolet were these:

Couch was a "part time" employee of Canterbury. There are no details of the extent or schedule of employment. His duties were varied—general help around the kitchen, cleaning, and delivering pizzas. Pertinent testimony of William Couch is as follows:

Q. Was that on a full-time basis, a part-time basis or what was the nature of your employment?

A. Part-time.

Q. How many hours a week did you work?

A. It varied. There wasn't any set hours or anything.

Q. What was your job with B & L pizza?

A. Just doing anything really. Mostly delivering pizza.

Q. Did you wait tables?

A. Washed dishes, folded pizza boxes, mopped the floor, you know, just anything.

Q. But your primary job was to make deliveries—deliver pizzas?

A. Well, that's what I did the most.

Q. Were there other employees at B & L Pizza who also made deliveries?

A. Yes.

Q. How many, if you recall?

. . . .

A. —I think maybe three others—two or three others.

Q. At the time of the accident on September 1, 1979, you were, I believe, operating a car of B & L Pizza and in the process of either delivering a pizza or returning to B & L Pizza after delivering a pizza. Is that correct?

A. Right.

Q. When you made deliveries of pizza from the beginning of your job there up until the time of this accident, did you always use a vehicle owned by B & L Pizza or its owners?

A. Yes, sir.

Q. And did they provide that vehicle to you for the purpose of making deliveries of pizzas?

A. Yes, I guess so.

Q. Other than making pizza deliveries, did you ever have the use of B & L Pizza's automobiles for any other purpose?

A. No, sir.

Q. What type of vehicles did they furnish to you for making pizza deliveries?

. . . .

A. There were two or three cars, two cars I think, in use at the time and usually it was like on my shift just me and another guy or sometimes three people delivering and it just depended on who was on the schedule and came in first. If I came in first, I would get the key for the car I wanted.

. . . .

Q. You were always furnished with an automobile by your employer when you did any business of the employer then while you were at work—

A. Yes.

Q. —that required the use of an automobile?

A. (Witness nodded affirmatively.)

. . . .

Q. How long did you work at B & L?

A. Maybe four months at the most. Three months. Maybe not that long.

Mrs. Rebecca W. Couch, mother of William H. Couch, testified in part as follows:

Q. How long did your son work for B & L Pizza?

A. Well, at that time he had just been working probably less than two months. He didn't work long there at all.

Pertinent testimony of the employer, Robert A. Canterbury, is as follows:

Q. How many people worked for you around the time of the accident?

A. I would have to check my records. But there were probably maybe four or five people. Well, I had a lot of part-time employees.

Q. Counting them.

A. Let me give you an explanation. Say, for instance, one employee might only work two or three nights.

Q. You mean a week or in all?

A. In a week. Yes.

Q. Well, can you name the other people who were working for you at the time of the accident?

A. Well, we have a pretty good turnover. I would have to go back during this time period and check, you know, check to see who was working.

Q. Will you do that and provide us with their names and the last known address and phone number you have for each employee who was employed on the day of the accident?

MR. REED: We will be glad to supply that.

THE WITNESS: Yes.

It is clear from the above that the 1965 Chevrolet was available to William Couch when he was working and when his work required its use and when it was not in use by another employee.

No Tennessee authority is found on the definition or elements of "regular use." Appellant cites *Kern v. Liberty Mutual Insurance Co.,* (8th Circuit 1968) 398 F.2d 958. In that case, the "additional insured" was a regular employee of the owner who had regular duties including that of substitute school bus driver which occurred quite frequently, sometimes two or three days a week, and the vehicle travelled the same route three times a day. The facts as to regularity of use in the present case are not nearly as detailed or specific as those of the cited case.

In *Birmingham Fire Ins. Co. of Pennsylvania v. Sharrow*, 249 F.Supp. 429 (S.D.Fla., 1965), a trial court opinion, the additional insured was a part time employee of the owner of the vehicle which was regularly used by employees of the owner. The trial court ruled that regular use by employees was sufficient to confer regular use upon a part time employee.

In *Moore v. State Farm Mutual Automobile Ins. Co.*, 239 Miss. 130, 121 So.2d 125 (1960), the insured sought medical payments for injuries while operating his employer's truck. Plaintiff was a regular employee, but drove a truck only two or three times a week. The policy had an exclusion for injuries sustained while occupying another automobile owned by or furnished for regular use of insured. The Mississippi Supreme Court held that the exclusion was effective.

Medical payments under a similar policy provision were sought in *International Service Ins. Co. v. Walther*, Tex.Civ.App.1971, 463 S.W.2d 774. The truck occupied by plaintiff was one of three owned by plaintiff's employer, all of which were used by plaintiff as needed in the business of his employer. The Texas court held the exclusion effective.

*Jones v. Perkins*, 75 Wis.2d 18, 248 N.W.2d 468 (1977) involved a liability policy with a similar exclusion. The Court denied coverage of a deputy sheriff who was operating a police car which he used during duty hours, but not personally.

*Voelker v. Travelers Indemnity Co.*, 260 F.2d 275 (7th Cir.1958) also involved a liability policy with a similar exclusion. The driver seeking coverage was operating a national guard military vehicle. He was a regularly trained and designated driver who regularly drove national guard vehicles, but had not previously driven the truck involved. The Court held that the "regular use" exclusion applied.

*Bringle v. Economy Fire & Cas. Co.*, Iowa 1969, 169 N.W.2d 879, involved a medical payment provision with a "regular use" exclusion. The injured party was a regular employee who in the course of his employ-

ment regularly rode in one of several vehicles belonging to his employer. The Iowa Court held that transportation as a passenger was "regular use" and applied the exclusion.

*Farm Bureau Mutual Automobile Ins. Co. v. Marr*, 128 F.Supp. 67 (D.C.N.J.1955), involved a similar exclusion in a liability policy. The insured was operating one of several vehicles of a car pool maintained by his employer for insured and other employees of his federal agency. Insured had driven a car from the same pool about fifty times in ten months, an average of five times per month. The trial court took the position that use was more than occasional, hence it must be regular.

In the present case, the evidence shows only that William Couch, III, worked as a part time employee. By his testimony of the method of operation and performance of his duties, he gives some indication that he had worked more often than occasionally.

Definitions of the word, "regular" include:

3a  steady or uniform in course, practice or occurrence; not subject to unexplained or irrational variation; steadily pursued; orderly, methodical.

b  (1) returning, recurring or received at stated, fixed or uniform intervals, (2) functioning at uniform intervals,

4a  constituted, selected, made or otherwise handled in conformity with established or prescribed usages, rules or discipline.

(Webster's Third International Dictionary, Unabridged.)

Steady or uniform in course, practice or occurrence; not subject to unexplained or irrational variation. [*Rooney*] *Rodney v. City of Omaha*, 104 Neb. 260, 177 N.W. 166. Made according to rule, duly authorized, formed after uniform type, built or arranged according to established plan, law or principle. *Merchant's Nat. Bank of Los Angeles v. Continental Nat. Bank of Los Angeles*, 98 Cal.App. 523, 277 P. 354, 361. Antonym of "casual" or "occa-

sional." *Palle v. Industrial Commission*, 79 Utah 47, 7 P.2d 284, 290, 81 A.L.R. 1222.

(Black's Law Dictionary Fourth Edition)

■ The issue of regularity hinges not so much upon the regularity of the working time of the operator, but upon the regularity with which the vehicle was furnished or available. In the present case, it is uncontroverted that the vehicle was regularly, i.e., constantly, available to the employees of Mr. Canterbury, including William Couch, III, when he was on duty. In this sense, the vehicle was regularly available to Couch within the meaning of the policy exclusion.

■ The obvious purpose of the "non-owned vehicle" coverage is to afford protection to the insured on occasions when the insured is temporarily using a vehicle not covered by the policy.

■ The obvious purpose of the exclusion under discussion is to prevent abuse of the "non-owned" privilege by unnecessarily burdening the insurer with liability which ought to be covered by other insurance. For example, the exclusion excludes the insured from coverage on a second vehicle which he has not insured, or from coverage on a vehicle which insured has placed in the name of another in order to "borrow" it and use it without paying additional premium for the coverage.

■ Also, the purpose of the exclusion is to deny coverage to the insured while using a vehicle as to coverage of which he has opportunity to investigate. If a vehicle is not regularly available to insured and if insured uses a vehicle only on isolated occasions, it would not be expected that he inquire as to liability insurance on the vehicle. If, however, insured has available to him or uses a vehicle with any degree of regularity, it is expected that he would ascertain whether the vehicle is covered by liability insurance, and, if not, would arrange for suitable protection for himself.

In the present case, having used the vehicle with some regularity over a period of two, three, or four months, the insured would naturally be expected to ascertain whether the vehicle was insured and, if not, to protect himself otherwise.

In the light of the purpose of the exclusion, the regularity of use shown in the present case was sufficient to satisfy the conditions of exclusion.

■ The second issue presented by appellant relates to paragraph 10, quoted above. The evidence shows that, on some deliveries, a "delivery charge" was added to the price of the merchandise delivered. However, such delivery charge inured to the benefit of the employer and not to the additional insured. It is not considered that a delivery charge added to the price of the article delivered amounted to using the vehicle for transportation of property for a fee. Therefore, this Court would not sustain the exclusion claimed in the second issue.

Appellee undertakes to distinguish the authorities cited above by the absence of an unrelated paragraph which appears in the present policy. This Court does not consider the distinction to be valid.

Authorities cited by appellant are not considered as persuasive as those cited above.

Accordingly, the judgment of the Chancellor is reversed. Upon remand, a declaratory judgment will be entered in conformity with this opinion. All costs, including costs of this appeal, are taxed against the defendant, William Couch, III. The cause is remanded for further necessary proceedings.

Reversed and remanded.


LEWIS and CONNER, JJ., concur.