**IN THE COURT OF APPEALS OF TENNESSEE**
**WESTERN SECTION AT JACKSON**

FILED

March 17, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **LORRIE BETTS MURPHY, Ind. and** | **)** | |
| **as Mother and next Friend of** | **)** | |
| **April Murphy,** | **)** | |
| | **)** | |
| Plaintiffs/Appellants, | **)** | Shelby Circuit  No. 70768 T.D |
| | **)** | |
| VS. | **)** | Appeal No. 02A01-9705-CV-00105 |
| | **)** | |
| **JESSICA R. CHADWELL  and** | **)** | |
| **GUY ANDERSON,** | **)** | |
| | **)** | |
| Defendants/Appellees. | **)** | |

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE KAY S. ROBILIO, JUDGE

**HARVEY L. GIPSON**
Memphis, Tennessee
Attorney for Appellants

**WARREN D. McWHIRTER**
**McWHIRTER & WYATT**
Memphis, Tennessee
Attorney for Appellees

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Plaintiff/Appellant, Lorie Betts Murphy ("Plaintiff") appeals the judgment of the trial

court granting Defendant/Appellee's, Mid-Century Insurance Company ("Mid-Century"), motion for summary judgment. For reasons state hereinafter, we affirm the judgment of the trial court.

## Facts and Procedural History

This case arises out of an automobile accident which occurred on October 1, 1994, at approximately 7:40 p.m. Plaintiff was operating a 1985 Chevrolet Camaro with her daughter, April Murphy ("Daughter"), riding as a passenger in the car. The Camaro was owned by Joseph P. Murphy ("Father" or "ex-husband") who was the father of Daughter and the ex-husband of Plaintiff. Plaintiff had the consent and permission of her ex-husband to drive the Camaro. On the day of the accident, Plaintiff was heading in a southerly direction on New Allen Road in Memphis, Tennessee. She arrived at the intersection of New Allen and Ridgemont Avenue. This intersection is controlled by a stop sign. Plaintiff stopped and then proceeded through the intersection. Defendant Jessica Chadwell was heading in an easterly direction on Ridgemont Avenue when she allegedly failed to observe the stop sign thereby colliding with Plaintiff. As a result, Plaintiff and Daughter suffered various personal injuries. Chadwell was in the course of her employment with Defendant Guy Anderson at the time of the accident. Anderson provided no insurance for the car Chadwell was driving. Plaintiff filed suit for these personal injuries. Additionally, Plaintiff filed a claim against Mid-Century which was served process pursuant to the uninsured motorist statute of this state. It is this insurance claim that is the focus of our concern in this matter.

When the accident occurred, Plaintiff was covered by an insurance policy issued by Mid-Century for her 1989 Ford Mustang. It is under this policy, specifically, under Part II, Coverage C of the policy which provides for uninsured motorist coverage, that Plaintiff seeks recovery for both herself and Daughter.

Mid-Century filed a motion for summary judgment asserting that paragraph 4 of Part II entitled "additional definitions used in this part only" barred Plaintiff and Daughter from

2

recovering under this policy. Particularly, paragraph 4 provides in part:

> Uninsured motor vehicle, however, does not mean a vehicle:
> a. Owned by or furnished or available for the regular use by you or any family member.

Mid-Century contends that Plaintiff admits in her deposition that she used the car 3-4 times per week, and as such, uses the car on a regular basis thereby disqualifying the car as an "uninsured motor vehicle" under the policy.

> Q: Could you estimate for me how many times a week you drove this particular vehicle, the '85 Camaro?
>
> A: I'd say three to four in a week.

Mid-Century further contends that Plaintiff admitted that she used the car on a regular basis.

> Q: Did you have a car that you used on a regular basis other than this '85 Camaro?
>
> A: That is correct.

Mid-Century asserts that since the 1985 Camaro was available for the regular use of Plaintiff, the Camaro is not an "uninsured motor vehicle" under the policy. Therefore, Mid-Century argues, there is no insurance afforded for Plaintiff or Daughter under the uninsured motorist provision in this policy for this particular accident.

In response to Mid-Century's motion for summary judgment, Plaintiff proffered her affidavit wherein she stated that the Camaro was not available to her for "regular use." Plaintiff further contends that the term "regular use" is not defined in the policy and is ambiguous, thus, creating a genuine issue of material fact.

Additionally, Mid-Century contends that Daughter should be barred from recovery under a section of Part II entitled "Exclusions." The section provides in part:

> This coverage shall not apply to bodily injury sustained by a person:
>
> 1. While occupying any vehicle owned by you or a family member for which insurance is not afforded under this policy or through being struck by that vehicle.

Mid-Century interprets the term "family member" to mean family member of the injured.

3

In this case, Mid-Century argues, Daughter was injured while occupying the vehicle of a family member, namely, her Father, Joseph Murphy. Consequently, Mid-Century contends that Daughter is barred from recovery under this provision in the policy.

Plaintiff argues that the term "family member," although defined, is still ambiguous. Specifically, Plaintiff argues that the term "family member" can be interpreted in two ways: (1) a family member of the insured; or (2) a family member of the injured person. Consequently, Plaintiff charges that this dispute over the interpretation of the term "family member" creates a genuine issue of material fact.

The trial court disagreed with Plaintiff and, consequently, granted Mid-Century's motion for summary judgment. Plaintiff appeals the judgment of the trial court raising the following issue to be considered by this court: whether the trial court properly granted summary judgment in favor of Mid-Century Insurance Company.

## Law and Discussion

This action to recover for personal injuries under the uninsured motorist provisions of an insurance policy issued by Mid-Century to Plaintiff was dismissed on motion for summary judgment, the propriety of which is presented for our review. Consequently, our review is *de novo* with no presumption of correctness. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03. On a motion for summary judgment, courts must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1993). Summary judgment is only appropriate when the case can be decided on legal issues alone.

4

As a matter of procedure, the moving party has the burden to show that there is no disputed, material fact creating a genuine issue for trial. *Payne v. Breuer*, 891 S.W.2d 200, 202 (Tenn. 1994). When the moving party makes such a showing through a motion properly supported by nonconclusory assertions, the burden shifts to the nonmoving party to set forth specific facts by using affidavits or discovery materials establishing that there is indeed at least a single disputed, material fact creating a genuine issue which must be resolved at trial. The nonmoving party may not rely on allegations made in the pleadings or conclusory remarks unsupported by facts.

The parties' respective rights and obligations are governed by their contract of insurance whose terms are embodied in the policy. As with any other contract, our responsibility is to give effect to the expressed intention of the parties, *Blaylock & Brown Constr., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990), by construing the policy fairly and reasonably, *Demontbreun v. CNA Ins. Cos.*, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991); *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982), and by giving the policy's language its common and ordinary meaning. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *Parker v. Provident Life & Accident Ins. Co.*, 582 S.W.2d 380, 383 (Tenn. 1979). We are not at liberty to rewrite an insurance policy simply because we do not favor its terms or because its provisions produce harsh results. In the absence of fraud, overreaching, or unconscionability, the courts must give effect to an insurance policy if its language is clear and its intent certain. *Quintana v. Tennessee Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989).

At trial, much of the discussion focused on the definition of "uninsured motorist vehicle" under Part II paragraph 4 of the policy. This was done in order to illustrate that the 1985 Camaro which Plaintiff was driving was not covered under the uninsured motorist provisions in the policy. This emphasis was misplaced.

We note that an "uninsured motor vehicle" is the vehicle driven by the third party tortfeasor in an accident and not the vehicle driven by the insured. In this case, the

5

"uninsured motor vehicle" would be the 1985 Cavalier driven by Chadwell and not the 1985 Camaro driven by Plaintiff-insured. It appears that the focus at trial should have been on the policy provision that would prevent coverage from attaching to a vehicle furnished for the regular use of Plaintiff. We need not be concerned with the definition of an "uninsured motor vehicle" under the facts in this case.

Under part five of the section entitled "Definitions" in the policy, "Insured car" is defined as follows:

> 5. Any other private passenger car, utility car, or utility trailer not owned by or furnished or available for *regular use* by you or a family member.

(Emphasis added). This is the essential provision in determining whether or not Plaintiff is covered under the terms of the policy for the 1985 Camaro she was driving at the time of the accident. The parties' arguments concerning the definition of "regular use" are still germane to a discussion focused on the definition of an "insured car" under the definitions section of this policy.

Plaintiff argues that "regular use" is an ambiguous term and, as such, creates a genuine issue of material fact sufficient to overcome Mid-Century's motion for summary judgment. Tennessee authority concerning the definition of "regular use" is scant. However, as both parties point out, *United Services Auto. Ass'n. V. Couch*, 643 S.W.2d 668 (Tenn. Ct. App. 1982), deals with the proper interpretation of "regular use." The *United Services* court looked to decisions in other states to aid in determining the interpretation of "regular use."

In *Moore v. State Farm Mutual Automobile Ins. Co.*, 239 Miss. 130, 121 So.2d 125 (1960) plaintiff was a regular employee, but operated employer's truck only 2-3 times per week. The Mississippi Supreme Court held this to be regular use.

In *Farm Bureau Mutual Automobile Ins. Co. v. Marr*, 128 F. Supp. 67 (D.C.N.J. 1955), insured was operating one of several vehicles of a car pool maintained by his

6

employer for insured and other employees of his federal agency. Insured had driven a car from the same pool about fifty times in ten months, an average of five times per month. The trial court took the position that use was more than occasional, hence it must be regular.

Additionally, the *United Services* court looked at definitions of "regular" in Webster's Third International Dictionary. *United Services Auto. Ass'n. v. Couch*, 643 S.W.2d at 671. In doing so, they came to the conclusion that the issue of regularity centers around the regularity with which a particular vehicle is furnished or made available for the insured's use. *Id.* at 672. The court in *United Services* stated in relevant part:

> The obvious purpose of the "non-owned vehicle" coverage is to afford protection to the insured on occasions when the insured is temporarily using a vehicle not covered by the policy. . . [t]he obvious purpose of the exclusion under discussion is to prevent abuse of the "non-owned" privilege by unnecessarily burdening the insurer with liability which ought to be covered by other insurance. . . [a]lso, the purpose of the exclusion is to deny coverage to the insured while using a vehicle as to coverage of which he has an opportunity to investigate. If a vehicle is not regularly available to insured and if insured uses a vehicle only on isolated occasions, it would not be expected that he inquire as to the liability insurance on the vehicle. If, however, insured has available to him or uses a vehicle with any degree of regularity, it is expected that he would ascertain whether the vehicle is covered by liability insurance, and, if not, would arrange for suitable protection for himself.

We find the term "regular use" to be unambiguous. When employing the plain and ordinary meaning of "regular use," we conclude that Plaintiff's use of the Camaro was, undoubtedly, "regular." There is no debate about the "degree of regularity" with which Plaintiff used the 1985 Camaro. It is uncontroverted that the 1985 Camaro was consistently available to Plaintiff. In fact, Plaintiff, in her deposition, states that she used the car 3-4 times a week. We have no doubt that this is "regular use" within its common, customary meaning. It is this kind of regular use that the policy was designed to exclude from coverage. As such, the 1985 Camaro is not an "insured car" under the provisions of the policy. Consequently, Plaintiff and Daughter are prohibited from recovering under said policy. We conclude that the trial court was correct in granting summary judgment for the

7

defendant under the facts of this case.[1]

The judgment of the trial court granting summary judgment in favor of Mid-Century Insurance Company is affirmed. Costs are taxed to Plaintiff, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

---

[1] We find it unnecessary to address the exclusion provisions discussed by Mid-Century in its brief concerning an additional ground to exclude coverage for Daughter. Such discussion has become superfluous.