IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
February 19, 2009 Session

## WAYNE B. GILLARD v. JAMES A. TAYLOR, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001065-04      Rita L. Stotts, Judge**

———————————

**No. W2008-00937-COA-R9-CV - Filed March 18, 2009**

———————————

Police officer who was injured while driving his patrol car brought this action against his automobile insurer to recover uninsured motorist benefits under his personal policy. The trial court denied insurers' motion for summary judgment, finding that the regular use exception found in the policy was ambiguous. The insurance company appeals. We reverse and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S. and HOLLY M. KIRBY, J., joined.

Gary H. Nichols, Michael R. Flynn, Memphis, TN, for Appellant, Nationwide Insurance Company

Eugene A. Laurenzi, Memphis, TN, for Appellee, Wayne B. Gillard

## OPINION

The relevant facts of this case are undisputed. Appellee Wayne Gillard began working as a police officer for the City of Memphis in August of 1999. On April 21, 2002, Officer Gillard was assigned to patrol the 221st Ward in a 1998 Crown Victoria police cruiser (the "Cruiser") owned by the City of Memphis. The record indicates that Officer Gillard would drive the Cruiser whenever it was assigned to him, which was approximately sixty percent of the time. If Officer Gillard was not assigned the Cruiser, he would be assigned another cruiser from the fleet.

On April 21, 2002, during his shift, Officer Gillard's Cruiser was involved in a three-car accident, which was caused by Defendant James Taylor. At the time of the accident, Mr. Taylor was uninsured. As a result of the accident, Officer Gillard sustained injuries to his neck. The City of Memphis paid Officer Gillard's medical expenses in the amount of $41,000, and also paid Officer Gillard his regular salary while he was recuperating.

Following the accident, Officer Gillard gave notice under the uninsured motorist coverage provision of a Nationwide Insurance Company ("Appellant") policy. This policy was held by Officer Gillard's wife's uncle, Purnell Blackwell. Officer Gillard was a named insured on Mr. Blackwell's policy. Nationwide denied coverage to Officer Gillard on grounds that his use of the City of Memphis Cruiser constituted a "regular use" and was therefore excluded from coverage under the Nationwide uninsured motorist policy.

On February 25, 2004, Officer Gillard filed a personal injury lawsuit against Mr. Taylor, and a declaratory judgment action against Nationwide. The declaratory judgment action gives rise to the instant appeal. Nationwide answered the complaint on May 4, 2004, and the trial court issued an order severing the declaratory judgment action from the personal injury suit against Mr. Taylor.

On May 1, 2006, Nationwide filed a motion for summary judgment in the declaratory judgment action. Officer Gillard filed a response in opposition to Nationwide's motion on May 31, 2006. The first hearing on the motion for summary judgment was held on February 23, 2007. The parties were given an opportunity to file supplemental memoranda of law in support of their respective positions on the summary judgment motion. A second hearing was held on April 5, 2007. At this hearing, the trial court again requested more research and advised that judgment would be reserved until further hearing. On June 3, 2007, the parties were again before the court for a hearing on the motion for summary judgment. On August 14, 2007, the trial court entered its order, denying Nationwide's motion for summary judgment. On August 24, 2007, Nationwide filed a motion for interlocutory appeal, which motion the trial court granted by order of November 16, 2007. This Court granted Nationwide's Tenn. R. App. P. 9 application for interlocutory appeal on May 2, 2008.

Nationwide raises two issues for review as stated in its brief:

> 1. Whether the trial court erred in denying the motion for summary judgment of Nationwide by holding as a matter of law that the regular use exclusion contained in the Nationwide uninsured motorist insurance policy is ambiguous.

> 2. Whether the trial court erred in holding as a matter of law that the offset provision contained in the Nationwide insurance policy is not applicable to this case.

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable

inferences in favor of that party, and discard all countervailing evidence. *See id*. In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***See Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. ***See Bain***, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. ***See Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn.1997).

In ***Naifeh v. Valley Forge Life Ins. Co.***, 204 S.W.3d 758 (Tenn.2006), the Tennessee Supreme Court restated the following principles that guide our courts in the interpretation of an insurance policy:

> In interpreting an insurance contract, we must determine the intention of the parties and give effect to that intention. ***Christenberry v. Tipton***, 160 S.W.3d 487, 494 (Tenn. 2005); ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn. 1975). An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. ***Parker v. Provident Life & Acc. Ins. Co.***, 582 S.W.2d 380, 383 (Tenn.1979). When there is doubt or ambiguity as to its meaning, an insurance contract must be construed favorably to provide coverage to the insured. ***Christenberry***, 160 S.W.3d at 494. However, the contract may not be rewritten by the Court. ***Id***.; ***see also Tenn. Farmers Mut. Ins. Co. v. Witt***, 857 S.W.2d 26, 32 (Tenn.1993).

*Naifeh*, 204 S.W.3d at 768.

The policy at issue here reads, in relevant part, as follows:

> COVERAGE EXCLUSIONS
> This coverage does not apply to:

\*               \*               \*

4. Bodily injury suffered while occupying a motor vehicle:

> a. owned by;
> b. furnished to; or
> c. available for the regular use of
> you or a relative, but not insured for Auto Liability
> coverage under this policy. It also does not apply to
> bodily injury from being hit by any such motor
> vehicle.

Tenn. Code Ann. §56-7-1201(a)(2) provides that any named insured may reject uninsured motorist coverage. This provision of the Tennessee Code has been found to be valid and enforceable. *See, e.g., Weiss v. State Farm Fire & Cas. Co.*, 107 S.W.3d 503, 505 (Tenn. Ct. App. 2001). In *Terry v. Aetna Cas. & Sur. Co.,* 510 S.W.2d 509 (Tenn. 1974), our Supreme Court held that Tennessee's uninsured motorist statutes do not provide for broad coverage, but effectuate a limited and narrow purpose. *Id*. at 513-14. As discussed by our Supreme Court in *Hill v. Nationwide Mut. Ins. Co.*, 535 S.W.2d 327 (Tenn. 1976):

> Authorities accepting the [narrow coverage theory] point out that
> vehicular liability insurance is ordinarily written upon and follows
> particular scheduled vehicles. It is not written upon named
> individuals, and is not like general health or accident insurance
> coverage. The liability policy covers a scheduled vehicle, and extends
> its protection, through omnibus clauses, not only to the named
> insured but to members of his family and other persons using the
> vehicle with permission, subject to prescribed conditions and
> exclusions.

*Hill*, 535 S.W.2d at 220 (footnote omitted). Moreover, this Court has held that a "regular use" exclusion in insurance policies does not contravene public policy. *Shepherd v. Fregozo*, 175 S.W.3d 209, 217 (Tenn. Ct. App. 2005) (citing *Sandoz v. State Farm Mut. Auto. Ins. Co.*, 620 So.2d 441 (La.App. 3 Cir.1993)).

In *Shepherd*, this Court addressed a factually similar situation to the one at bar, in which a police officer was injured in an automobile accident while on-duty in his assigned cruiser. In affirming the trial court's grant of summary judgment in favor of the insurer on grounds that the regular use exclusion was enforceable, the *Shepherd* Court stated:

> [T]he standard "regular use" exclusion "predates the advent of
> uninsured motorist coverage, it being born and matured by cases
> interpreting basically the same exclusionary language as to liability

coverage. The Fourth Circuit Court of Appeals provides the readily apparent purpose of the exception, which is standard in automobile liability policies and in policies providing uninsured motorist coverage.

The great weight of authority is in accord with the interpretation of this provision by Judge Chestnut in *Aler v. Travelers Indemnity Co.*, D.C.Md., 92 F.Supp. 620, 623, where he said:

> This case involved the construction and application of the so-called "drive other automobiles" clause of the present standard automobile liability policy. The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so....

*Shepherd*, 175 S.W.3d at 212 (citing *Campbell v. Aetna Cas. & Sur. Co.*, 211 F.2d 732, 736 (4th Cir.1954)).

The *Shepherd* Court did much of the work of accumulating and analyzing the relevant case law on regular use exceptions to uninsured motorist coverage, and we quote it extensively:

> Further expositive of the "regular use" exclusion in its applicability to the case at bar are those cases where an employer provides a fleet of vehicles which may be randomly assigned to a particular employee. In *City of Jackson v. Freeman-Howie, Inc*., 239 Miss. 84, 121 So.2d 120, the Supreme Court of Mississippi held:
>
> > The proof clearly shows that insured's employer furnished for the regular use of insured a truck, either one of about ten, although insured did not regularly use any particular one of the fleet of ten trucks. Two or three trips a week were made by insured as driver of one of the ten trucks of his employer, and he made other trips as helper on one of the trucks. It cannot be said that insured's use of the employer's trucks was other than regular use.

-5-

The question narrows to this: Does the term "regular use" in the exclusionary clause refer to one specific automobile? As stated, the obvious purpose of the exclusionary clause is to limit the extension of medical payments coverage to casual or infrequent use of occupancy of automobiles other than the one defined in the policy, in this case the insured's Chevrolet. It is regular use of other automobiles that brings the exclusionary clause into operation, and if insured's employer assigns him one specific automobile for regular use or a number of automobiles, any one of which may be assigned for a particular trip, the result is the same. An automobile is furnished insured "for regular use" in either event. We know of no authority holding to the contrary.

*Moore v. State Farm Mutual Automobile Ins. Co.*, 239 Miss. 130, 121 So.2d 125, 126-27 (1960).

While Tennessee courts have not dealt specifically with a case involving the "regular use" exclusion as it relates to uninsured motorist coverage, this Court has made it clear as to liability coverage that the "regular use" exclusion is applicable and enforceable.

[*United Servs. Auto. Ass'n v. Couch*, 643 S.W.2d 668 (Tenn. Ct. App.1982)]....

*                         *                         *

In sister jurisdictions, a body of law has developed under the "regular use" exclusion as it relates to police vehicles available for regular use to policemen.... In *O'Brien v. Halifax Ins. Co. of Massachusetts*, 141 So.2d 307, Plaintiff was a police officer employed by Ormond Beach, Florida, and was insured as to his personal automobile by the Defendant insurance company. In his work as a police officer, Plaintiff was expected to and did use whichever one of four city-owned cars was assigned to him. While driving one of such vehicles, he was involved in an accident and sustained various personal injuries. He sued his private insurance company for medical benefits under his policy of insurance. The trial court, applying the "regular use" exclusion, directed a verdict for the defendant, and the District Court of Appeals of Florida, relying on *Moore v. State Farm Mutual Auto. Ins. Co.*, 239 Miss. 130, 121 So.2d 125 (1960) affirmed the judgment.

The holding in the Moore case that an exclusionary clause involved in that case, identical to that in the instant case, is not ambiguous when read in conjunction with the general coverage clause, appears to represent the majority opinion in this country, as pointed out by the Louisiana Court of Appeals in an exhaustive discussion of this area of the law in *Leteff v. Maryland Casualty Co.*, 91 So.2d 123 (1956)....

*O'Brien v. Halifax Ins. Co. of Mass.*, 141 So.2d 307, 308 (Fla.Dist.Ct.App.1962).

*Galvin v. Amica Mutual Ins. Co.*, 11 Mass.App.Ct. 457, 417 N.E.2d 34 (1981) is a case that on its facts closely parallels the case at bar. Galvin was a Boston police officer who owned a personal vehicle insured by Amica Mutual Insurance Company. His policy included uninsured motorist coverage. While on duty and operating his police cruiser, he was involved in a collision.... He brought suit against Amica under his uninsured motorist coverage, and the insurer denied coverage under the "regular use" exclusion in the policy. The particular cruiser that Galvin was driving was one of a pool of twelve or more Boston police cruisers which could have been assigned to Galvin at random on any given duty shift....

The trial court entered judgment for the defendant, and the Court of Appeals affirmed and stated the following:

Galvin's counsel contends that the language of the regular use exclusion, "an auto ... regularly used by you," should be taken as referring only to a particular vehicle and not to all the vehicles in a pool of vehicles regularly available to the insured motorist. We do not agree and see no ambiguity in the words used. A heavy majority of the decision elsewhere interpret such words (in closely similar policy language) as treating all motor vehicles in a pool, any one of which is available to the person insured, as within the regular use exclusion. The authorities are collected in 13 Couch §§ 45:1050 to 45:1065, especially §§ 45:1055 and 45:1059 (1965 & Supp.1980). *See* Annot. 86 A.L.R.2d 937, especially § 7(b).

One decision elsewhere upon the regular use exclusion is very close on its facts to the present case. *See Kenney v. Employers' Liab. Assur. Corp.*, 5 Ohio St.2d 131, 132, 134-135, 214 N.E.2d 219 (1966). There, as in this case, a policeman was injured in one of several cruisers available in a pool. The policeman was not allowed to recover under his own policy. The opinion (at 134-135) said, "[O]n the facts of this case, we do not believe that the words 'an automobile ... furnished for the regular use' of plaintiff are ambiguous or can reasonably be interpreted so as not to describe the cruiser in which plaintiff was riding at the time of his injury.... In order to be excluded under this exclusionary clause, an automobile need not be a single particular automobile regularly furnished to the named insured. Thus it is well settled that an automobile will be excluded under such policy provisions although it is only one of a group of automobiles from which an automobile is regularly furnished to the named insured by his employer....

*Galvin v. Amica Mut. Ins. Co.*, 11 Mass.App.Ct. 457, 417 N.E.2d 34, 35-37 (1981). (footnotes omitted [and additional citations].).

*Shepherd*, 175 S.W.3d at 212-16.

In *United Servs. Auto. Ass'n v. Couch*, 643 S.W.2d 668 (Tenn. Ct. App.1982), United Services Automobile Association issued a liability insurance policy to Ms. Couch on her vehicle. Her son, who lived with her, was operating a non-owned vehicle, which was provided to him by his employer, when he was involved in an accident. The trial court declared coverage, finding that the son's use of the work vehicle was not contemplated in the regular use exclusion of the policy. On appeal, this Court reversed the trial court, finding that it was clear that the automobile driven by the son was used by him in his work on a regular basis. This Court reasoned:

The issue of regularity hinges not so much upon the regularity of the working time of the operator, but upon the regularity with which the vehicle was furnished or available. In the present case, it is uncontroverted that the vehicle was regularly, i.e., constantly, available to the employees of Mr. Canterbury, including William Couch, III, when he was on duty. In this sense, the vehicle was regularly

-8-

> available to Couch within the meaning of the policy
> exclusion.

***Couch***, 643 S.W.2d at 672.

In ***Murphy v. Chadwell***, No. 02A01-9705-CV-00105, 1998 WL 117407 (Tenn. Ct. App. Mar. 17, 1998), the plaintiff was injured when she was involved in an automobile accident with the defendant, who was uninsured. ***Id***. at *1. In ***Murphy***, as in the case at bar, the plaintiff argued that the term "regular use" was ambiguous and created a genuine issue of material fact. ***Id***. at *4. Although we noted that authority concerning the definition of "regular use 'is scant,'" relying upon both ***Couch*** and ***Moore***, we found that the term "regular use" as used in an uninsured motorist policy is unambiguous. ***Id***. at *5.

In the recent case of ***Hostottle v. Nationwide Mut. Ins. Co.***, No. 89036, 2007 WL 3203063 (Ohio Ct. App. 8 Dist. Nov. 1, 2007), the Ohio Court of Appeals addressed the meaning of the term "regular use" in a Nationwide uninsured motorist insurance policy. Relying upon prior case law, the Ohio Court noted that the term "regular use" has been defined as "frequent, steady, constant or systematic." ***Id***. at *2. The ***Hostottle*** Court concluded that a police officer's use of a police car nearly every day he worked constituted regular use, so as to fall within the exception in the policy. ***Id***. at *4. Consequently, the court reversed the trial court's denial of Nationwide's motion for summary judgment, seeking to have uninsured motorist coverage denied. ***Id***.

In a recent Pennsylvania case, the Superior Court concluded that the term "regular use" in an uninsured motorist policy was not ambiguous and that the words "suggest a principal use as distinguished from a casual or incidental use." ***Brink v. Erie Ins. Group***, 940 A.2d 528, 532 (Pa. Super. 2008).

Tennessee courts have similarly defined the term. In ***United Servs Auto Ass'n v. Couch***, 643 S.W.2d 668 (Tenn. Ct. App. 1982), we stated:

> Definitions of the word, "regular" include:
>
> 3a  steady or uniform in course, practice or occurrence; not subject to
>    unexplained or irrational variation; steadily pursued; orderly, methodical.
>
> b  (1) returning, recurring or received at stated, fixed or uniform
>    intervals, (2) functioning at uniform intervals,
>
> 4a   constituted, selected, made or otherwise handled in conformity
>    with established or prescribed usages, rules or discipline.
>
> (Webster's Third International Dictionary, Unabridged.)

Steady or uniform in course, practice or occurrence; not subject to unexplained or irrational variation. *[Rooney] Rodney v. City of Omaha*, 104 Neb. 260, 177 N.W. 166. Made according to rule, duly authorized, formed after uniform type, built or arranged according to established plan, law or principle. *Merchant's Nat. Bank of Los Angeles v. Continental Nat. Bank of Los Angeles*, 98 Cal.App. 523, 277 P. 354, 361. Antonym of "casual" or "occasional." *Palle v. Industrial Commission*, 79 Utah 47, 7 P.2d 284, 290, 81 A.L.R. 1222.

(Black's Law Dictionary Fourth Edition)

*Couch*, 643 S.W.2d at 671-72.

Black's Law Dictionary defines "regular use," as used in an insurance policy context, to be "[a] use that is usual, normal, or customary, as opposed to an occasional, special, or incidental use." Black's Law Dictionary,1540-41 (7 th ed. 1999) . This definition succinctly states the meaning of "regular use," and comports with other definitions set out in the previously decided cases. Because of its plain and simple language, we adopt the Black's Law Dictionary definition of "regular use."

The question now becomes whether Officer Gillard's particular use of the Cruiser constitutes "regular use" under the above definition. At his deposition, Officer Gillard testified, in relevant part, as follows:

> Q. How many times a month were you assigned that vehicle [i.e., the Cruiser] in January, February, March, April of 2002?
>
> A. I would say about 60 percent.
>
> Q. If you weren't assigned that vehicle were you assigned another vehicle in the pool?
>
> A. Yes.
>
> Q. Was there any other particular vehicle that you were assigned?
>
> A. No.
>
> Q. Is there any general custom that takes place in the Memphis Police Department regarding assignment of vehicles? What I mean by custom is are they assigned on a seniority basis, on regularity of use? Is there any custom whatsoever on assignment?

A. They are assigned to a ward.

Q. On each day when you reported to work in 2002 were you assigned some vehicle from that ward?

A. Yes.

Q. And that vehicle was provided to you by the City of Memphis?

A. Yes.

Q. And it was provided to you for your use [in] your employment as a police officer?

A. Yes.

\*                                        \*                                        \*

Q. Was there any day when you weren't assigned to a vehicle.

A. No.

Q. Was that vehicle assigned to you only when you were on the [job]?

A. Yes.

Q. Was the vehicle returned after each shift?

A. Yes.

From this testimony, we conclude that a reasonable jury could only find that Officer Gillard's use of the Cruiser meets the definition of regular use set out above. By his own testimony, Officer Gillard was assigned a vehicle from the fleet every day that he was on duty. His use of a fleet vehicle, therefore, was "usual, normal, [and] customary, as opposed to occasional, special, or incidental." Based upon our discussion above, the fact that Officer Gillard was assigned a different vehicle approximately forty percent of the time, does not negate a finding of "regular use." As stated by this Court in **Shepherd**, "'it is regular use of other automobiles that brings the exclusionary clause into operation, and if insured's employer assigns him one specific automobile for regular use or a number of automobiles, any one of which may be assigned for a particular trip, the result is the same. An automobile is furnished insured 'for regular use' in either event. We know of no authority holding to the contrary.'" **Shepherd v. Fregozo**, 175 S.W.3d at 213 (quoting **Moore v. State Farm**

***Mut. Auto. Ins. Co.***, 239 Miss. 130, 121 So.2d 125, 126-27 (1960)). Consequently, we find that the trial court erred in denying Nationwide's motion for summary judgment.

Because we have determined that the Nationwide policy does not provide coverage to Officer Gillard in this case, we decline to address Nationwide's second issue.

For the foregoing reasons, we reverse the order of the trial court, and remand the case for entry of an order granting summary judgment in favor of Nationwide. Costs of this appeal are assessed against the Appellee, Wayne B. Gillard, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, J.