PROGRESSIVE CASUALTY
INSURANCE COMPANY,
Respondent,

v.

Allen METCALF, et al., Defendants,

Northland Insurance Companies,
Appellant,

Cheetah Pizza, et al., Respondents.

No. C6–93–4.

Court of Appeals of Minnesota.

June 22, 1993.

Scott A. Brehm, St. Louis Park, for Progressive Cas. Ins. Co.

Louise Ann Dovre, Eric J. Magnuson, Brian A. Wood, Sarah E. Carlson, Rider, Bennett, Egan & Arundel, Minneapolis, for Northland Ins. Companies.

Robert E. Kuderer, Chadwick, Johnson & Condon, Minneapolis, for Cheetah Pizza, et al.

Considered and decided by HUSPENI, P.J., and DAVIES and HARTEN, JJ.

## OPINION

HUSPENI, Presiding Judge.

Progressive Casualty Insurance Company commenced this declaratory judgment action seeking a determination that James Watroba was insured under a personal automobile policy issued by Northland Insurance Companies and a commercial auto policy issued by Granite State Insurance Company. Northland moved for summary judgment, contending Watroba was "carrying property for a fee" and, therefore, coverage was excluded. Granite State and its insured, Cheetah Pizza, Inc., brought a cross-motion for summary judgment, asserting the exclusion was ambiguous and inapplicable. The trial court determined the exclusion was ambiguous and granted the summary judgment motion of Granite State and Cheetah Pizza. Northland has appealed. We affirm.

## FACTS

The facts are not disputed. Cynthia Kinler was injured in an automobile accident while she was a passenger in a car owned by Allen Metcalf and driven by Kelly Jo Metcalf. The Metcalf vehicle collided with an automobile owned and driven by James Watroba, an employee of Cheetah Pizza, who was making a pizza delivery at the time of the accident.

Watroba was paid by Cheetah on an hourly basis. In addition to his duties delivering pizzas, Watroba was expected to do preparation work, such as folding boxes, preparing plate and napkin packages, attaching coupons to pizza boxes and cleaning. Watroba received the same hourly wage whether he was delivering pizzas or performing other duties, but Watroba received tips from customers 70% to 75% of the time. Cheetah reimbursed Watroba .18¢ per mile for the use of his car for delivering pizzas. Cheetah did not charge

for delivery. Under the employment agreement between Watroba and Cheetah Pizza, Watroba was responsible for maintaining liability insurance coverage on his car.

Watroba had a liability insurance policy with Northland Insurance Companies. Granite State Insurance Company insured Cheetah under a commercial auto policy. The Metcalf vehicle was insured by Progressive Casualty Insurance Company.

Kinler brought suit against Watroba, who sought coverage from Northland. Northland denied coverage based on the following exclusion:

> We do not provide Liability Coverage for any person: * * * [f]or that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee.

Based on Northland's denial of coverage, Kinler made a claim for uninsured motorist benefits under the Progressive Casualty policy covering the Metcalf vehicle. Progressive Casualty then commenced the present declaratory judgment action. While this action was pending, Progressive Casualty settled Kinler's claim for $25,000.

On cross-motions brought by Northland, Cheetah, Granite State and Progressive for summary judgment, the trial court determined the Northland policy exclusion was ambiguous. The trial court granted summary judgment to Cheetah, Granite State and Progressive. Northland appeals.

## ISSUE

Did the trial court err in determining the exclusion in the Northland policy is ambiguous?

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Minn. R.Civ.P. 56.03. The trial court granted summary judgment based on its determination that the exclusion contained in the Northland policy was ambiguous. Wheth-

er an insurance policy provision is ambiguous is a question of law. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.,* 275 N.W.2d 32, 34 (Minn.1979). On appeal, this court must determine whether the trial court was correct in finding the policy language ambiguous. *Id.* This court need not defer to the trial court's determination on an issue of law. *Frost–Benco Elec. Assoc. v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

An insurance policy's language will be deemed ambiguous if it is reasonably subject to more than one interpretation. *ICC Leasing Corp. v. Midwestern Mach. Co.,* 257 N.W.2d 551, 554 (Minn. 1977). A policy may also be ambiguous when there is an irreconcilable conflict between terms or provisions within the policy. *Morris v. Weiss,* 414 N.W.2d 485, 487 (Minn.App.1987) (citing *Rusthoven v. Commercial Standard Ins. Co.,* 387 N.W.2d 642, 644 (Minn.1986)). If the language of the policy is not ambiguous, the language used must be given its usual and accepted meaning. *Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). A court must not create an ambiguity where none exists in order to afford coverage to the insured. *Farkas v. Hartford Accident & Indem. Co.,* 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969).

The trial court concluded that the exclusionary clause of the policy, when applied in the context of the facts of this case, is ambiguous. We agree. While Minnesota courts have not addressed the ambiguity of the exclusion at issue here,[1] courts in other states that have considered the exclusion at issue have focused on the difficulty in defining the term "fee." While these cases are not controlling, they are persuasive.

The term "fee" could refer to a per trip charge, as the Louisiana courts noted in *RPM Pizza, Inc. v. Automotive Cas. Ins. Co.,* 601 So.2d 1366, 1370 (La.1992) and

*McPherson v. Viola,* 593 So.2d 1370, 1371 (La.App.1992). There was no such charge in this case.

The term "fee" could also refer to the wages paid to an employee for driving. In this case, however, Watroba received the same wage whether he was driving his car or performing other duties. Therefore, Watroba's wages cannot be considered a "fee" within the meaning of the exclusion. The mileage reimbursement Watroba received also is not determinative. *See United States v. Milwaukee Guardian Ins. Co.,* 966 F.2d 1246, 1247 n. 3 (8th Cir.1992).

The Tennessee Court of Appeals has held that an exclusion similar to that involved in this case did not preclude coverage for an employee of a pizzeria who used the employer's car to deliver pizza. *United Servs. Auto. Ass'n v. Couch,* 643 S.W.2d 668, 672 (Tenn.App.1982). In *Couch,* the court noted that although a delivery charge was added to the price of some delivered pizzas, the delivery charge went to the employer, not the driver. *Id.* The court stated:

> It is not considered that a delivery charge added to the price of the article delivered amounted to using the vehicle for transportation of property for a fee.

*Id.* The Arkansas Court of Appeals has also determined that the word "fee," when used in this exclusion, is ambiguous. *Pizza Hut of America, Inc. v. West General Ins. Co.,* 36 Ark.App. 16, 816 S.W.2d 638, 641 (Ark.App.1991).

Given the various possible meanings of the word, we conclude that the term "fee," as used in the exclusion at issue, is reasonably subject to more than one interpretation and, therefore, must be deemed ambiguous. Given this ambiguity, we construe the exclusion against the insurer and find coverage for Watroba in this case. *See Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.,* 307 Minn. 352, 354, 239 N.W.2d 768, 770 (1976) ("ambiguities are to be resolved against the insurer

---

**1.** An exclusionary clause similar to the one in this case was part of the policy language in *Denike v. Western Nat'l Mut. Ins. Co.,* 473 N.W.2d 370, 373 (Minn.App.1991). However, ambiguity was not an issue in that case. Instead, this court found that there were genuine issues of material fact regarding whether the insured intended to rent his vehicle to a church for a fee or gratuitously loaned it without intending to turn a profit. *Id.* at 373–74.

and in accordance with the reasonable expectation of the insured").

## DECISION

On the facts of this case, the exclusion on which the insurer relies is ambiguous and will be construed against the insurer to find coverage for the insured.

**Affirmed.**

DAVIES, J., concurs specially.

DAVIES Judge (concurring specially).

I concur in the result, but find unsatisfactory the analysis of the majority, resting on a finding of insurance policy ambiguity.

I would instead base the decision on the public policy requirements of Minnesota's system of compulsory automobile insurance and on the doctrine of reasonable expectations. The analysis of the majority, turning on the technicality of whether a fee is collected to pay for pizza delivery, is inadequate to deal either with the public policy requirements of our compulsory insurance system or with the expectations of the ordinary purchaser of family automobile insurance.

Minn.Stat. § 65B.48 (1992) requires all automobiles operated in the state of Minnesota to be insured; and under Minn.Stat. § 65B.49, subd. 3 (1992), compulsory insurance includes, not only the no-fault benefits, but also the liability coverages at issue in this case.

Appellant Northland Insurance Co. sold James Watroba an automobile insurance policy that purported to satisfy Minnesota's compulsory insurance requirements. Under the majority's analysis, that insurance would be nullified on the occasion of this accident except for the fact that a policy exclusion was inappropriately drafted. If effective, however, such an exclusion would defeat the strong policy underlying Minnesota's system of compulsory insurance. *See* Minn.Stat. § 65B.42 (1992); *Tuenge v. Konetski,* 320 N.W.2d 420, 421 (Minn.1982) (One of the major purposes of the No-Fault Act is " 'to relieve the severe economic distress of uncompensated victims of automobile accidents within this state.' ").

I believe that, once an insurer purports to provide the mandated insurance coverages for an identified automobile, the insurer cannot escape liability by means of exclusions that apply to rather ordinary and incidental commercial uses of the vehicle. In the long run, the majority's reliance on policy ambiguity will be either destructive or ineffectual; given enough time, the drafters of insurance policies will eliminate ambiguity and, thus, foreclose the device the majority uses to reach an appropriate result.

Here, the vehicle was essentially a family automobile used incidentally by Watroba in his part-time employment delivering pizzas for Cheetah Pizza, Inc. The failure of Watroba to disclose that usage of the automobile at the time the insurance was purchased is wholly foreseeable. Watroba may have obtained the job after the insurance was purchased, or, if he was so employed at the time of purchase, he might reasonably have viewed this activity as a de minimis commercial use that he was not required to disclose. Therefore, the sanction against the undisclosed usage should not be a denial of coverage (making the insured a misdemeanant!), but rather a claim for additional premiums, premiums commensurate with the additional risk entailed in the undisclosed commercial usage.

Watroba, I am certain, is far short of the line defining where use of a vehicle "to transport persons or property" is such a substantial part of vehicle usage that it becomes fraud on the insurance carrier. Even if viewed as actual fraud, it does not justify enforcement of the exclusion.

Regarding the doctrine of reasonable expectations, most families purchasing automobile insurance expect their coverage to reach incidental, irregular "commercial" use of the vehicle. *See Atwater Creamery Co. v. Western Nat'l Mutual Ins. Co.,* 366 N.W.2d 271, 278 (Minn.1985) (reasonable expectations doctrine enables courts to "construe insurance contracts without having to rely on [or bend and stretch] arbi-

694

trary rules which do not reflect real-life situations").

I concur for the reasons stated in this opinion.[1]

---

**1.** A priority of coverage issue lurks within these   facts, but was not raised.