UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLANT, *v*. LIGHTNING

ROD MUTUAL INSURANCE COMPANY, APPELLEE.

[Cite as *United States Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.* (1997), 80

Ohio St.3d 584.]

*Insurance — Automobile liability — Construction of policy — Exclusion of*

*liability phrase "for a fee" ambiguous — Construed strictly against*

*insurer and liberally in favor of insured.*

(No. 96-2516 — Submitted September 24, 1997 — Decided December 31,

1997.)

CERTIFIED by the Court of Appeals for Washington County, Nos. 95 CA 27 and

95 CA 29.

The facts of this case are not in dispute. Ina M. Spurlock, an employee of

The Pizza People, Inc., d.b.a. Domino's Pizza ("Domino's"), while using her car

to deliver a pizza, collided with a motorcycle and injured its operator, Robert

Shaw. Shaw sued Spurlock and Domino's for personal injuries and presented a

claim to Lightning Rod Mutual Insurance Company ("Lightning Rod"), the

issuer of Spurlock's personal automobile policy. Lightning Rod denied coverage

based on the following exclusion in its policy:

"We do not provide Liability coverage for any person: * * * [f]or that

person's liability arising out of the ownership or operation of a vehicle while it is

being used to carry persons or property for a fee. * * * "

Shaw then turned to United States Fidelity & Guaranty Company

("USF&G"), the carriers of a business automobile policy issued to Domino's.

USF&G undertook Spurlock's defense under a reservation of rights and sought a

judgment declaring that Lightning Rod's policy covers Spurlock for the accident.

The parties stipulated all material facts and each moved for summary judgment. Following the Tenth District Court of Appeals' reasoning in *Colonial Ins. Co. of California v. Jermann* (1995), 102 Ohio App.3d 384, 657 N.E.2d 336, the trial court found the language of the exclusion in Lightning Rod's policy ambiguous as applied to the facts of the case and granted summary judgment to USF&G on its complaint for declaratory judgment. The court of appeals, finding that the "for a fee" language unambiguously excluded the commercial use at issue, reversed and certified its judgment as in conflict with *Jermann.* The cause is now before the court upon our determination that a conflict exists.

_____

*Robert H. Willard*, for appellant.

*Andrew J. Mollica*, for appellee.

_____

**COOK, J.** The issue in this case is whether Lightning Rod's policy excluding coverage for operation of a vehicle carrying property "for a fee" covers an insured who is paid an hourly wage and is reimbursed for mileage for making deliveries but is not paid per delivery.

"[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning." *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167-168, 24 O.O.3d 274, 275, 436 N.E.2d 1347, 1348. A "fee" is defined as "[a] recompense for an official or professional service or a charge or emolument or compensation for a particular act or service. A fixed charge or perquisite charged as recompense for labor; reward, compensation, or wage given to a person for performance of services or something done or to be done." Black's Law Dictionary (6 Ed.1990) 614; see,

2

also, Webster's Third New International Dictionary (1986) 833 (with definitions of "fee" as a fixed charge for various particular services). A determination of whether Spurlock was carrying property "for a fee" will differ depending on which part of the definition we look to, that is, whether a fee includes *any* "compensation, or wage * * * for performance of services" or must be "for a particular act or service."

Thus, Lightning Rod's policy can be read two ways: first, as excluding from coverage use of a vehicle to transport property when there is *any* kind of payment to the insured, and second, as excluding coverage only when a fee is paid *specifically for* the particular act of transporting property. Under the first reading, Spurlock's use of her car to deliver pizza would be excluded from coverage because Domino's was paying her an hourly wage. Under the second reading, however, this use would *not* be excluded by the Lightning Rod policy, since neither Domino's nor its customers paid Spurlock a fee specifically for delivering the pizza. Under either reading, the policy excludes taxicabs transporting persons specifically for a fee or moving vans transporting property specifically for a fee. Only the first reading, however, excludes Spurlock's errands on behalf of her employer.

"Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, at syllabus. "The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490, citing *Am. Fin. Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 44 O.O.2d 147, 239

3

N.E.2d 33. Because the "for a fee" exclusion is susceptible of more than one interpretation, the trial court's construction of it against Lightning Rod was correct.

Whether Lightning Rod intended to cover commercial use of Spurlock's vehicle is irrelevant because the policy language is imprecise. In fact, more than commercial uses would be affected if Lightning Rod's policy could be read as excluding from coverage *any* use of a car to carry property when *any* payment to the insured is involved (the only proposed interpretation of "for a fee" that would exclude Spurlock). Incidental transport of items by an insured while "on the clock" for an employer would also be encompassed by such a reading.

Thus, as there is no genuine issue as to any material fact, USF&G is entitled to judgment as a matter of law, and summary judgment was properly granted. We therefore reverse the judgment of the court of appeals and remand the cause for consideration of the issue of attorney fees.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

RESNICK, J., concurs separately.

DOUGLAS, J., dissents.

LUNDBERG STRATTON, J., dissents.

_____

**ALICE ROBIE RESNICK, J., concurring**. I concur in the majority's resolution of this case, and join in reversing the judgment of the court of appeals

4

and reinstating the judgment of the trial court on the certified issue. I write separately to underscore the ambiguity of the "for a fee" exclusion.

A special category of cases has emerged to cover the general fact pattern presented by this case. These cases could be labeled "pizza delivery cases," although the basic issue could arise in any case which involves a similar delivery of a product by an employee. Courts in various states have found the same or like exclusions unenforceable in this type of "pizza delivery" case, concluding that coverage was available to the delivery driver despite the exclusion. Illustrative cases include *Progressive Cas. Ins. Co. v. Metcalf* (Minn.App.1993), 501 N.W.2d 690; *Am. Motorists Ins. Co. v. Travelers Ins. Co.* (1993), 604 N.Y.S.2d 475, 158 Misc.2d 257; *RPM Pizza, Inc. v. Automotive Cas. Ins. Co.* (La.1992), 601 So.2d 1366; *Pizza Hut of Am., Inc. v. W. Gen. Ins. Co.* (1991), 36 Ark.App. 16, 816 S.W.2d 638; *United Serv. Auto. Assn. v. Couch* (Tenn.App.1982), 643 S.W.2d 668.

Several Ohio courts of appeals addressing the issue have found the exclusion inoperative and have required coverage. See, *e.g., Progressive Ins. Co. v. Heritage Ins. Co.* (1996), 113 Ohio App.3d 781, 682 N.E.2d 33; *Colonial Ins. Co. of California v. Jermann* (1995), 102 Ohio App.3d 384, 657 N.E.2d 336. Like most of the decisions from other jurisdictions cited above, these courts have employed an "ambiguity" analysis to find the exclusion unenforceable, generally focusing on various definitions of what is a "fee" or a "charge."

However, as evidenced by the fact that this case comes to us as a certified conflict, the view that the exclusion is unenforceably ambiguous is not a unanimous one. In addition to the opinion below in the case *sub judice*, see, *e.g.*, the dissenting opinion in *Jermann*, 102 Ohio App.3d at 389, 657 N.E.2d at 339 (Deshler, J., dissenting); *Dhillon v. Gen. Acc. Ins. Co.* (Apr. 11, 1991), Tex.App.

5

No. C14-90-00714-CV, unreported, 1991 WL 51470; *Krauss v. DeRocili* (Aug. 2, 1988), Del.Super.Ct. No. 86C-NO-60, unreported, 1988 WL 90532.

Although the decisions that find the "for a fee" exclusions ineffective to deny coverage typically on their faces narrowly rely on an "ambiguity" analysis focusing on the word "fee," many of the decisions, often without directly so stating, appear to be influenced by the practical implications that would accompany allowing the exclusion to operate. See, *e.g., Progressive Cas. Ins. Co. v. Metcalf,* 501 N.W.2d at 693-694 (Davies, J., concurring specially), recognizing some of the practical considerations underlying these types of cases, and finding the exclusion unenforceable both on public policy grounds and upon consideration of the consumer expectations of the insurance purchasing employee.

A narrow analysis focusing solely on the ambiguity of the word "fee," with differing results depending on how the employee is paid, or on whether the employee's delivery duties were minimal compared to other tasks, seems to be incomplete, and to miss the additional point of a consideration of what the exclusion actually attempts to accomplish, and of the context surrounding its invocation. My ambiguity analysis thus goes beyond a narrow consideration of the word "fee." The ambiguity of the exclusion is broader, and is based *both* on the imprecision in the word "fee" and on the practical considerations involved. This ambiguity is present in all of these pizza delivery "for a fee" cases, regardless of the minor differences in details among the cases, and militates against enforcement of the exclusion.

My understanding of this issue is based on the conviction that these "pizza delivery" cases have underlying policy considerations distinctly different from cases which do not involve localized product delivery, *e.g.,* a case involving an

6

over-the-road semi-trailer driver. Because my analysis focuses on some unique aspects of the "pizza delivery" cases, the foregoing lists of cited cases include only cases specifically presenting a pizza delivery fact pattern. Whether, and to what extent, these considerations would apply in a case not involving "pizza delivery" would depend on the particular facts of that case. Depending upon the facts, a different scenario may require a totally different approach.

The most desirable ultimate resolution of the overall problems presented in these cases would be for the employer to specifically provide motor vehicle insurance as primary coverage for its drivers who deliver pizzas with their own vehicles, or, alternatively, for the employer to reimburse the employee for the added cost of procuring insurance to specifically cover the act of delivery. The employer then would bear the costs of insuring employee drivers and the vehicles of employee drivers as one of the costs of doing business. As common practice appears to be now, the employer often does not provide coverage for employees who deliver with their own vehicles, but requires those employees to provide their own insurance. Simultaneously, it appears that no consideration is given by the employer to the possibility that a typical employee's insurance policy, which frequently contains a "for a fee" exclusion, might not cover the delivery driver in the process of making, or returning from, a delivery.

Appellee Lightning Rod expresses a valid concern when it points out that an employer should bear legitimate costs of doing business by ensuring that delivery employees are specifically covered, and that the employee's insurance company is penalized when the employee's insurer is made to bear the cost instead. Nevertheless, if that were the rationale for allowing the employee's insurer to deny coverage, in some situations the employee personally, not the employer's insurer, would be the one penalized. As a practical matter, it appears

7

obvious that employees who deliver pizzas would often have no reason to anticipate that their motor vehicle insurance would not cover them while they were employed as delivery drivers, if they even thought about the matter at all. Expecting delivery drivers to have a sophisticated appreciation of the scope of this policy exclusion, and to bear the consequences of the exclusion, seems unrealistic. It seems particularly unfair to penalize those employees for an exclusion in their policies that does not on its face explicitly, precisely, and unmistakably inform them that delivering pizzas is an activity which is not covered.

In an ideal world, these problems could be circumvented by having the employer ensure coverage of its employees who make deliveries with their own vehicles, so that the employees' personal policies would not be implicated. However, since this is not an ideal world, we must resolve this case given all the complexities underlying the situation. While we may like to see fundamental changes in the motor vehicle insurance relationship between employers and delivery employees, we cannot mandate that such changes should come about. When all the factors in this case are taken into account, including the ambiguity of the exclusion, the only practical alternative is to have the employee's insurer provide coverage.

_____

LUNDBERG STRATTON, J., dissenting. I believe the following facts are pertinent to this case. Two months before the accident in question, Ina Spurlock purchased a personal automobile insurance policy from Lightning Rod Mutual Insurance Company. The insurance agent specifically asked Spurlock whether she delivered pizzas for Domino's and she replied that she did not. Therefore, the agent sold Spurlock an insurance policy that excluded liability coverage for

any accidents that occurred while "carry[ing] persons or property for a fee," instead of a commercial policy that would have provided liability coverage for commercial deliveries.

However, Spurlock's duties for Domino's did include the delivery of pizzas. According to Lightning Rod, during a period of 143 days in 1991, Spurlock delivered pizzas on 125 days. Domino's records indicate that Spurlock used the Domino's vehicle only fifteen of those days. Furthermore, Domino's required all its pizza delivery drivers to carry liability insurance on their own personal vehicles used for pizza deliveries.

Domino's paid Spurlock an hourly wage for delivering pizzas. It was the same hourly wage she received for other duties performed for Domino's. When delivering pizza, Spurlock was reimbursed by Domino's at eighteen cents per mile, and she also may have received gratuities directly from customers.

I disagree with the majority that various definitions of the word "fee" create an ambiguity in what is otherwise an unambiguous exclusionary clause. There is no need to read various meanings or connotations into the word "fee." A common, ordinary usage of the word is sufficient. The plain language of the clause excludes coverage to Spurlock because she was carrying property (pizza) for a fee (hourly wage). The pizza delivery driver's hourly wage could constitute either a "fee" defined as "compensation, or wage * * * for performance of services," or a fee "for a particular act or service" of delivering the pizzas at that time. Black's Law Dictionary (6 Ed.1990) 614. As Judge Deshler pointed out in his well-reasoned dissent in *Colonial Ins. Co. of California v. Jermann* (1995), 102 Ohio App.3d 384, 389, 657 N.E.2d 336, 339, "This is an attempt to manufacture ambiguity by creating a distinction without a difference." See, also, *Dhillon v. Gen. Acc. Ins. Co.* (Apr. 11, 1991), Tex.App. No. C14-90-00714-CV,

9

unreported, 1991 WL 51470; *Krauss v. DeRocili* (Aug. 2, 1988), Del.Super.Ct. No. 86C-NO-60, unreported, 1988 WL 90532.

The fact is that Spurlock was not gratuitously delivering pizzas for Domino's or for the persons who ordered the pizzas. She was being paid to deliver the pizzas. Whether it be a driver who exclusively delivers pizzas, or one like Spurlock whose job purportedly included duties in addition to delivering for Domino's, the person making the delivery is being paid to use his or her vehicle for the purpose of delivering pizzas at a particular time.

Furthermore, the majority's opinion sanctions an employer's shifting the risk of doing business upon the employee. An inherent risk of Domino's business is the risk of injury to its driver-employees delivering pizzas. Domino's recognized this risk and insured against it by purchasing a business policy from USF&G. The parties admitted at oral argument that if Spurlock's individual policy did not provide coverage for this accident, then the USF&G policy would. However, the majority's opinion now shifts any risk of doing business from Domino's and places the cost of this risk upon Domino's employees. This is an unfair and inequitable result, particularly since it is Domino's that receives the financial benefit from the sale and delivery of its pizzas. The majority opinion allows an employer to refuse to supply its drivers with a company vehicle and, instead, to require its employees to place their own vehicles into commercial use. These employees will now be forced to bear the increased costs of a commercial insurance policy so that they may continue to deliver pizzas for the financial benefit of their employer.

Finally, the majority refuses to consider that, by using his or her own vehicle to make the deliveries, the pizza delivery driver is placing that vehicle into commercial use. This is a risk that the insurance company did not anticipate

10

or contemplate when issuing its policy to the insured. In fact, the exclusionary language at issue proves that Lightning Rod specifically did not intend to insure the vehicle for any such commercial uses. Using common sense, one can discern a difference between the employee who uses his or her own vehicle for an isolated, solitary errand for an employer and the employee who is repeatedly required to drive his or her personal vehicle in the regular course of company business. Lightning Rod should not be held accountable for risks it did not intend to insure.

The Lightning Rod policy was issued to an individual for personal use. If the vehicle insured under the policy is to be used for anything other than personal use, *i.e.*, business or commercial use, this requires different coverage.

Consequently, for the above reasons, I respectfully dissent and would affirm the court of appeals.