953 So.2d 250 (2006)
PROGRESSIVE GULF INSURANCE COMPANY, Appellant
v.
WE CARE DAY CARE CENTER, INC., Nathan A. Bonner, Nancy G. Deese and Jessie Deese, A Minor, Appellees.
No. 2005-CA-00905-COA.
Court of Appeals of Mississippi.
October 10, 2006.
Rehearing Denied March 20, 2007.
*251 Charles Cameron Auerswald, Richard L. Kimmel, Steven Cavitt Cookston, Greenwood, attorneys for appellant.
Robin L. Roberts, Hattiesburg, Brandon L. Brooks, Charles Martin Leggett, Waynesboro, attorneys for appellees.
Before LEE, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. In this appeal, we are asked to determine whether an automobile insurance policy issued by Progressive Gulf Insurance Company to Bessie Mullins afforded liability coverage for a vehicular accident that occurred on January 15, 2002. Progressive instigated this declaratory judgment action in the Circuit Court of Wayne County against Mullins, Genevieve Lee, We Care Day Care Center, Inc., Nathan Bonner, Nancy Deese, and Jessie Deese, a minor (collectively, We Care). Progressive moved for summary judgment, arguing that an exclusion in the policy defeated coverage. The circuit court found that the exclusion was ambiguous and that coverage existed. The court entered summary judgment in favor of We Care; Progressive appeals.
¶ 2. We find that the exclusion was ambiguous and that, construing the exclusionary language in favor of the insured, coverage existed under the Mullins policy. Therefore, we affirm the grant of summary judgment in favor of We Care.

FACTS
¶ 3. The parties agree that the material facts in this case are undisputed. Bessie Mullins owned a 1993 GMC van insured by *252 Progressive. Genevieve Lee, Mullins's daughter, was a listed driver on Mullins's policy. The policy included bodily injury and property damage liability coverage with limits of $10,000 each person and $20,000 each accident for bodily injury and $10,000 each accident for property damage.
¶ 4. We Care Day Care Center, Inc. provided day care services for the elderly. As a regular part of its operations, We Care provided transportation for its clients to and from the day care facility located in Richton, Mississippi. On or about January 15, 2002, We Care hired Lee to drive We Care's clients. Lee entered into a contract with We Care. The contract stated that Lee was to be paid hourly at minimum wage by We Care for providing transportation services. The evidence established that no mileage reimbursement was contemplated by We Care. Lee received no payment from We Care based on the number of passengers she transported, nor did Lee receive any payment from the passengers themselves. There is no evidence of if or how the passengers whom Lee transported paid We Care for the driving service.
¶ 5. On January 15, 2002, one of We Care's vehicles was in the auto shop for repair and Oma Hibbler, We Care's program director, asked Lee to use Mullins's 1993 GMC van to transport clients.[1] Accordingly, Lee used the GMC van in the course and scope of her employment to drive one of We Care's clients, Eunice Bonner, from Richton, Mississippi to Waynesboro, Mississippi. En route, the GMC van struck a vehicle driven by Nancy Deese in which Jessie Deese, Nancy's minor son, was a passenger. We Care paid Lee, at her hourly wage rate, a total of twenty-eight dollars for the day's work.
¶ 6. Nathan Bonner commenced an action against Mullins, Lee and We Care for the wrongful death of Eunice Bonner from her injuries sustained in the accident. On July 30, 2003, Progressive filed a "Complaint for Declaratory Judgment" against We Care, Lee, Mullins, Bonner, and Nancy and Jessie Deese. We Care counterclaimed, arguing that, under the Mullins policy, Progressive had a duty to defend and indemnify We Care. Nancy Deese, herself and on behalf of Jessie Deese, asserted a counterclaim against Progressive for damages and a cross-claim against We Care, Lee, and Mullins.
¶ 7. In its complaint, Progressive sought a judgment declaring that there was no coverage under the Mullins policy for any claims arising from the January 15, 2002 accident. Progressive relied upon an exclusion from coverage clause in the Mullins policy, which stated that liability coverage did not apply to:
1. bodily injury or property damage arising out of the ownership, maintenance, or use of a vehicle while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools;
On February 7, 2005, Progressive filed a motion for summary judgment arguing that, at the time of the accident, Lee was using the insured vehicle to carry a person for compensation or a fee, an activity excluded from coverage under the above clause.
*253 ¶ 8. The trial court observed that no Mississippi court has construed the exclusionary clause at issue in this case. After examining two cases construing similar exclusionary language, the trial court found that the language was ambiguous as applied to the facts of this case. The court stated:
There was no fee per person per trip charged to this court's knowledge. There is no real definition of compensation or fee to this court's knowledge. Who is compensating the driver and who is compensating the owner of the day care for the service of the transportation[?] Is the fee for the service included in the day care fee? The court is of the opinion that if the court cannot determine what the terminology of the contract means, then it must be ambiguous. As the court has found that the terminology is ambiguous, then it will be construed in favor of the insured. State Farm Mutual Automobile Ins. Co. v. Scitzs, 394 So.2d 1371, 1372 (Miss.1981).
¶ 9. Progressive appeals, arguing that the exclusionary clause was unambiguous as applied to this case. For the reasons articulated below, we affirm.

STANDARD OF REVIEW
¶ 10. Under Rule 56(c) of the Mississippi Rules of Civil Procedure, a party is entitled to summary judgment if the evidentiary matters before the court, including pleadings, depositions, answers to interrogatories, admissions on file, affidavits, etc., demonstrate that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. This Court reviews the grant or denial of a summary judgment motion de novo. Mass. Bay Ins. Co. v. Joyner, 763 So.2d 877, 878(¶ 5) (Miss.2002).

LAW AND ANALYSIS
I. DID THE TRIAL COURT ERR IN DETERMINING THAT THE EXCLUSIONARY LANGUAGE WAS AMBIGUOUS WHEN APPLIED TO THE UNDISPUTED FACTS OF THIS CASE?
¶ 11. The interpretation of insurance policy language presents a question of law. Lewis v. Allstate Ins. Co., 730 So.2d 65, 68(¶ 12) (Miss.1998). This Court adheres to well-established rules of construction of insurance contracts. State Farm, 394 So.2d at 1372. We read the policy as a whole, considering all the relevant portions together and, "whenever possible, should give operable effect to every provision in order to reach a reasonable overall result." J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So.2d 550, 552(¶ 8) (Miss.1998). The policy is construed most strongly against the insurer as the drafter of the policy. State Farm, 394 So.2d at 1372; J & W Foods, 723 So.2d at 552(¶ 8). Like other contracts, when an insurance contract is plain and unambiguous, it will be enforced as written. State Farm, 394 So.2d at 1372. Ambiguity is present when policy language is susceptible of two or more reasonable interpretations. Miss. Farm Bureau Cas. Ins. v. Britt, 826 So.2d 1261, 1265(¶ 14) (Miss.2002). In the case of ambiguity, this Court will apply the interpretation favoring the insured, and will determine the intent of the parties to the insurance contract with reference to what a reasonable person in the insured's position would have understood the terms to mean. J & W Foods, 723 So.2d at 552(¶ 9). When interpreting ambiguous policy language, we will give the words their plain, ordinary, and popular meaning, not a philosophical or scientific meaning. Blackledge v. Omega Ins. Co., 740 So.2d 295, 298(¶ 7) (Miss.1999). When *254 "there is no practical difficulty in making the language of an insurance contract free from doubt, any doubtful provision in the policy should be construed against the insurer." State Farm, 394 So.2d at 1372. Nonetheless, where the policy is free from ambiguity, this Court will not adopt a strained interpretation of the policy for the purpose of preventing hardship to the insured. Titan Indem. Co. v. Estes, 825 So.2d 651, 656 (¶¶ 17-18) (Miss.2002).
¶ 12. Additional considerations are implicated when we are confronted with exclusions and limitations to coverage. Our supreme court has pronounced that, while clear and unambiguous policy language will be enforced according to its terms, "recovery cannot be limited by an insurer for benefits for which a premium is paid by an insured, notwithstanding clear and unambiguous language of attempted limitation by the insurer." Gov't Employees Ins. Co. v. Brown, 446 So.2d 1002, 1006 (Miss.1984). Clauses in a policy seeking to limit coverage "must be written in clear and unmistakable language" and are strictly construed. Miss. Farm Bureau Mut. Ins. Co. v. Jones, 754 So.2d 1203, 1204(¶ 8) (Miss.2000). But, when stated without uncertainty or ambiguity, exclusionary language is binding upon the insured. Lewis v. Allstate Ins. Co., 730 So.2d 65, 70(¶ 25) (Miss.1998).
¶ 13. Progressive contends that the "carrying persons for compensation or a fee" exclusion in the Mullins policy was free from ambiguity. Progressive argues that the January 15, 2002 accident was specifically excluded from liability coverage because the accident occurred while Lee was using the van to carry a person, Bonner, "for compensation or a fee" in the form of Lee's wages from We Care. We Care argues that the exclusion was ambiguous because it could signify that there is no coverage anytime payment is received by the insured, or it could signify that there is no coverage only when the passenger provides compensation or a fee in exchange for transportation. Both parties also discuss the meaning and clarity of the words "fee" and "compensation." As no Mississippi court has construed the "used to carry persons or property for compensation or a fee" exclusion, we have turned to other jurisdictions for guidance. We conclude that the exclusion is capable of two equally reasonable interpretations. Consequently, we give the clause the reading most favorable to the insured and affirm the grant of summary judgment in favor of We Care.
¶ 14. There are numerous cases from other jurisdictions considering similar exclusionary language, especially the more pervasive "used to carry persons or property for a fee" and "used to carry persons or property for a charge" exclusions. See Pizza Hut of America, Inc. v. West Gen. Ins. Co., 36 Ark.App. 16, 816 S.W.2d 638, 639 (1991) (for a fee); U.S. v. Milwaukee Guardian Ins. Co., 966 F.2d 1246, 1247 (8th Cir.1992) (for a charge).[2] We begin our discussion with the two cases relied upon by the trial court. The earlier of these, Travelers Insurance Co. v. State Farm Mutual Automobile Insurance Co., 175 F.Supp. 673 (E.D.La.1959), aff'd, 274 F.2d 208 (5th Cir.1960), is the sole case that has applied Mississippi law to this type of exclusion. In Travelers, the exclusion provided that State Farm's policy did not apply while the insured vehicle was being "`used for carrying persons for a *255 charge' . . . `but the transportation on a share expense basis in a private passenger automobile of friends, neighbors, fellow employees or school children shall not be deemed carrying persons for a charge.'" Id. at 675. State Farm argued that there was no coverage for an accident that had occurred while the insured was using the vehicle to transport co-employees to a job site. Id. The employer was paying the insured a mileage allowance of $15 for the first seventy-five miles and ten cents per mile thereafter, and State Farm argued that the mileage allowance constituted a "charge" for carrying the passengers. Id. at 674, 675. State Farm argued that the exclusion applied because the mileage allowance was paid by the employer, not by the insured's co-employees on a shared expense basis. Id. at 675.
¶ 15. The district court disagreed. The court reasoned that the "carrying persons for a charge" and similar exclusions had no application where a car owner was being reimbursed for the use from the employer on a mileage basis; therefore, the fact that the car owner was carrying co-employees while being reimbursed from the employer for mileage should not trigger the exclusion. Id. at 676 (citing Johnson v. Cont'l Cas. Co., 167 So. 114 (La.Ct.App.1936)). In so holding, the district court observed that the "carrying persons for a charge" exclusion was intended to apply to situations where the insured vehicle was being used as a temporary taxi, since several courts had found the "public livery or conveyance" exclusion inapplicable to the vehicle's use as a temporary taxi. Id. The court further stated:
It is true that there are some other cases interpreting provisions similar to the one here, which exclude coverage where passengers are carried on a casual or informal basis for a charge. But in each of those cases, each passenger paid a specific amount for his carriage. Moreover, even in those cases the authorities are by no means uniform. If the courts cannot with any degree of assurance, or unanimity, interpret exclusion provisions of this kind, that fact alone weighs heavily against the insurer because the fine print of the policy, where ambiguous, is construed in favor of the assured.
Id. (citations omitted).
¶ 16. In the second case, Johnson v. Allstate Ins. Co., 505 So.2d 362 (Ala.1987), Alabama's supreme court construed similar exclusions contained in the personal automobile insurance policy issued to a day care center operator, Johnson. The day care center, Kiddie Kollege, provided a daily pick-up service to transport children between their homes and the day care center. Id. at 363. Parents desiring to use the service signed a form and paid one dollar each way for the transportation. Id. Johnson provided the use of his van, insured under the personal automobile policy, for the transportation service. Id. During its rounds, the van was involved in an accident and several children were injured. Id. The policy contained an exclusion from liability coverage stating: "`This coverage does not apply to liability for (1) your insured auto while used to carry persons or property for a charge, or any auto you are driving while available for hire by the public. This exclusion does not apply to shared expense car pools.'" Id. at 363-64. The policy also had an exclusion from collision and other coverage stating the coverage did not apply to "`any auto used for the transportation of people or property for a fee'" and that "`[t]his exclusion does not apply to shared expense car pools.'" Id. at 364.
¶ 17. Johnson argued that the van was not used to carry persons for a charge or for a fee because the one dollar per child *256 each way was used to defray the expenses of operating the van. Id. at 367. The court found that it was irrelevant how the money collected from the passengers was used. Id. The court found four factors to be of central importance: (1) whether the amount charged was definite; (2) whether the amount charged was proportionate to the actual expenses of the trip; (3) whether the amount charged was voluntary as opposed to being paid as consideration to the driver; and (4) whether the driver and passengers were engaged in a common enterprise. Id. The court found that the one dollar per child each way was paid as consideration to Johnson, was unrelated to Johnson's actual expenses, and that the payment was not made to further any common enterprise between Johnson and the students. Id. Therefore, the court concluded, Johnson was transporting paying passengers for a set fee, an activity within the scope of the policy exclusions. Id.
¶ 18. We Care distinguishes Johnson from this case because, in Johnson, the passengers paid a set fee for transportation to and from the day care center and here there is no evidence that We Care's elderly clients paid anything for the transportation service. We Care argues that this case is more like Travelers, where the "for a charge" exclusion was held ambiguous when the employer paid an employee for using his own car to drive himself and others. Progressive contends that Travelers is distinguishable from this case because, in Travelers, the policy excluded from coverage carrying persons "for a charge," while the Mullins policy excluded from coverage carrying "persons for compensation or a fee." Progressive argues that the "compensation or a fee" language unambiguously excludes from coverage the insured's transportation of persons while being paid any money, including an hourly wage.
¶ 19. The facts before us are that Lee was paid an hourly wage for driving We Care's clients. She did not receive a mileage reimbursement. We Care's clients did not pay anything for the transportation. Nor was Lee paid by We Care on a per-client or a per-trip basis. These facts parallel neither Travelers, where the insured was paid a mileage reimbursement from the employer to transport co-employees to a job site, nor Johnson, where the insured received one dollar per trip from each passenger. Here, Lee's employer paid her an hourly wage to transport We Care's non-paying clients. To resolve the quandary presented by the "used to carry persons or property for compensation or a fee" exclusion as applied to this case, we find helpful the precedent construing this type of exclusion in the context of pizza delivery, which sometimes involves an hourly wage earned by the deliverer and no set delivery charge.
¶ 20. In the typical pizza delivery case, an employee of a pizza seller is involved in an automobile accident while delivering pizzas and the question presented is whether the accident was covered under the employee's personal automobile insurance policy, or whether an exclusion similar to the one sub judice applies. In some cases, the delivery driver or the pizza seller receives a per-delivery charge; in some cases, the delivery driver receives an hourly wage and no per-delivery charge is levied. Several courts have considered the exclusion as applied to the employee's receipt of wages and/or a mileage reimbursement during pizza delivery, with conflicting results. These cases provide perspective on the exclusion as applied to the hourly wage driver.
¶ 21. In Amerisure Ins. Co. v. Graff Chevrolet, Inc., 257 Mich.App. 585, 669 N.W.2d 304, 309-10 (2003), rev'd on other grounds, 469 Mich. 1003, 674 N.W.2d 379 *257 (2004), the court found that an exclusion in a car rental contract for "carrying people or property for consideration, express or implied" applied to an accident that occurred while a pizza delivery driver received hourly wages from the employer and tips from customers for delivering pizzas. The court recognized that other courts had found similar exclusions to be ambiguous as to whether the exclusions were intended to apply to hourly wages. Id. at 310 n. 8 (citing Randy J. Sutton, Annotation, What Constitutes Use of Automobile "To Carry Persons or Property for Fee" Within Exclusion of Automobile Insurance Policy, 57 A.L.R. 5th 591, 603 (1998)). The court rejected this contention, stating:
Threehouse was employed by Hungry Howie's to make and deliver pizzas. He was paid the minimum wage and was not reimbursed for his mileage, although he did receive tips. In our view, because Threehouse was hired for the purpose of delivering pizzas, his transportation of those pizzas was for consideration. When he borrowed his fiancee's car, he did so with the intent to use the car to deliver pizzas so that he could fulfill the conditions of his employment and receive payment in returnif he refused to deliver the pizzas, he would not be paid. He did not simply intend to use the car to drive to work and back.
Id. at 310.
¶ 22. A different result was reached in Progressive Casualty Ins. Co. v. Metcalf, 501 N.W.2d 690, 692 (Minn.Ct.App.1993). In Metcalf, a pizza delivery driver had an accident during his rounds. Id. at 691. The delivery driver was paid an hourly wage, eighteen cents per mile, and received customer tips seventy to seventy-five percent of the time. Id. The hourly wage compensated the delivery driver for his duties at the restaurant as well as for making deliveries. Id. The pizza seller did not charge for delivery. Id. The delivery driver's personal automobile insurance policy excluded coverage for "the ownership or operation of a vehicle while it is being used to carry persons or property for a fee." Id. The court's analysis focused on the ambiguous meaning of the word "fee." The court observed that "fee" could refer to a per-trip charge. Id. at 692. The court rejected the proposition that "fee" could refer to the wages paid to the employee for driving because the employee received wages for duties in addition to driving. Id. Therefore, the court found that the word "fee" was ambiguous and that coverage existed. Id.
¶ 23. In RPM Pizza, Inc. v. Automotive Casualty Insurance Co., 601 So.2d 1366, 1367 (La.1992), two pizza delivery drivers were involved in separate accidents. They were compensated by wages. Id. No per-delivery charge was levied on customers by the pizza seller or by the delivery drivers. Id. The drivers' automobile insurance policies excluded liability coverage when the insured used a vehicle "to carry persons or property for a fee." Id. at 1368. The court discussed the meaning of the word, "fee," which was undefined by the policies. Id. at 1368-69. The court stated that "fee" could "encompass only specific contracts of carriage such as when a person makes a definite payment to another to carry a specific piece of property, such as hauling trash or moving furniture, or when a passenger pays a taxi fare to carry him from one point to another." Id. at 1368. Or, "fee" could signify compensation for labor. Id. The policy also had a business-use exclusion with a savings provision for an automobile owned by the insured. Id. Because the broader interpretation of "fee" conflicted with the savings provision, the court concluded that "carrying property for a fee" signified a fixed charge and *258 not wages or compensation generally. Id. at 1369.
¶ 24. Another approach was taken by the court in U.S. Fidelity & Guaranty Co. v. Lightning Rod Mutual Insurance Co., 80 Ohio St.3d 584, 687 N.E.2d 717 (1997). Again, a pizza delivery driver had an accident while being paid an hourly wage plus mileage for delivering pizza; no per-delivery charge was levied. Id. at 718. The operation of a vehicle carrying property for a fee was excluded from coverage under the delivery driver's automobile insurance policy. Id. The court cited various definitions of the word "fee," and found that coverage would depend on whether "fee" signified any compensation or wage for the performance of services or had to be for a particular act or service. Id. at 719. The court then stated:
Thus, Lightning Rod's policy can be read two ways: first, as excluding from coverage use of a vehicle to transport property when there is any kind of payment to the insured, and second, as excluding coverage only when a fee is paid specifically for the particular act of transporting property. Under the first reading, Spurlock's use of her car to deliver pizza would be excluded from coverage because Domino's was paying her an hourly wage. Under the second reading, however, this use would not be excluded by the Lightning Rod policy, since neither Domino's nor its customers paid Spurlock a fee specifically for delivering the pizza. Under either reading, the policy excludes taxicabs transporting people specifically for a fee or moving vans transporting property specifically for a fee. Only the first reading, however, excludes Spurlock's errands on behalf of her employer.
Id. The court pointed out that the broader reading would include any incidental transport of items by an insured while "on the clock." Id. Having found that the exclusion was susceptible of two readings, one favorable to the insured, the court found that the exclusion was ambiguous and that coverage existed. Id.
¶ 25. A recent case from the Supreme Court of Pennsylvania provides further illumination. Prudential Property and Cas. Ins. Co. v. Sartno, 903 A.2d 1170 (Pa.2006). In that case, the court considered the following exclusion:
Cars for Hire:
We will not pay for bodily injury or property damage caused by anyone using a car covered under this part to carry people or property for a fee.
This does include a car pool.
But you and a resident relative are covered if either of you cause [sic] an accident while a passenger in a non-owned car for hire.
Id. at 1172. Sartno, the insured, had an accident while delivering pizzas for his employer, the Pizzeria. Id. Sartno received a per-delivery wage and tips; there was no per-delivery charge. Id. Prudential filed a declaratory judgment action, arguing that because Sartno earned an hourly wage, his car was a "car for hire" used to "carry property for a fee" within the scope of the exclusion. Id. at 1172. The question before the supreme court on appeal from the superior court was "whether or not Sartno carried `property for a fee' when he delivered pizza for free as a paid employee of the Pizzeria." Id. at 1175.
¶ 26. The court found the exclusion to be ambiguous and reversed the contrary holding of the superior court. Id. at 1178. The superior court, relying on Brosovic v. Nationwide Mut. Ins. Co., 841 A.2d 1071 (Pa.Super.2004), had reasoned that "[t]he focus of our inquiry should not be on what a customer paid for the pizza or what the [Pizzeria] charged or did not charge for the delivery. Rather, our focus should be *259 on the benefit that accrued to [Sartno], who is the insured, for delivering the pizzas." Id. at 1173. In Brosovic, the insured drove a delivery van owned by a delivery service that charged its customers per delivery. Id. at 1176. The insured was paid a wage for making the deliveries. Id. Brosovic held that the exclusion applied because "`[a] delivery van is certainly a vehicle used to carry property for a fee. It is of no consequence that the fee was paid to [the driver's] employer rather than to [the driver] himself.'" Id. (quoting Brosovic, 841 A.2d at 1074).
¶ 27. The Pennsylvania supreme court found that Brosovic was "inapposite because the holding in that case that the property was being carried for a fee arose from the fact that the company imposed a charge for delivery." Id. at 1177. The court held that the superior court had improperly focused on the benefit that accrued to Sartno from delivering the pizzas. Id. That analysis had sanctioned Prudential's own broad reading of its exclusionary clause. Citing Lightning Rod, the supreme court rejected that this broad reading was the only reasonable one, holding that
at least two perspectives . . . are reasonable: (1) using a broad interpretation, Sartno did carry property for a fee because his deliveries occurred during the course of his employment, for which he received wages; or (2) under a narrower interpretation, Sartno did not carry property for a fee because there was no delivery charge. The instant matter is a prime example of language in a policy that can be understood in more than one way.
Id. at 1177. The court concluded the exclusion was ambiguous and construed it against the insurer and in favor of coverage. Id. at 1177.
¶ 28. Lightning Rod's analysis began with the various definitions of the word "fee." Prudential also involved a "for a fee" exclusion. Progressive admits that the word "fee" may be ambiguous. Arguing that the disjunctive use of the term "compensation" cures any ambiguity inherent in the word "fee," Progressive contends that none of the cases that have found the "for a fee" exclusion to be ambiguous are applicable here. Progressive argues that the word "compensation" has a broader meaning than "fee" and clearly signifies any payment of money from any source whatsoever.
¶ 29. After careful consideration of the policy language, we disagree. The alternate readings of the "for a fee" exclusion articulated in Lightning Rod and the similar alternate readings in Prudential are analytically relevant to determining the meaning of the "compensation or a fee" exclusion sub judice. As Progressive argues, one definition of the word "compensation" is "payment or remuneration." Webster's Ninth New Collegiate Dictionary (1991). Adopting this definition favoring Progressive arguendo, the exclusion would bar from coverage the use of the vehicle to carry a person for payment or remuneration. However, the ambiguity identified in Lightning Rod still exists because it is unclear what acts constitute using a vehicle to carry persons "for" payment or remuneration. If "compensation" signifies payment or remuneration, the question remains whether the exclusion for "use of a vehicle to carry persons or property for compensation or a fee" encompasses (1) any situation where money is paid to the insured in connection with transporting a person, or (2) is intended to capture only those situations where money is paid by the passenger on a per-trip basis. In a case like this one, an employee transporting a person while receiving an hourly wage would have no coverage if the *260 clause were read to exclude the use of the vehicle to transport a person anytime the employee earns wages while making the trip. But, the employee would have coverage if "used to carry persons or property for compensation or a fee" were read more narrowly to exclude only those situations where compensation was paid on a per-trip basis, in other words, where the passenger or someone on the passenger's behalf paid the employee, the employer, or an interested third party specifically in exchange for the passenger's transportation. Both of these meanings of "used to carry persons for compensation or a fee" are equally reasonable from the standpoint of the insured; therefore, the exclusion is ambiguous. Having identified two equally reasonable meanings of the exclusion, one favorable to the insured, we cease our analysis without discussing any other possible interpretations of the exclusionary language.
¶ 30. There is no evidence that Bonner or anyone on her behalf paid Lee, We Care, or anyone else for Lee's transportation of Bonner to Waynesboro. Rather, Lee was paid an hourly wage representing payment for all of her driving duties for We Care. Thus, Lee's activities were not encompassed by the narrower reading of the exclusion. Because we have found the exclusion to be ambiguous, we give the exclusion the meaning favorable to the insured, We Care. Certainly, Progressive could have drafted "clear and unmistakable" language that would have unambiguously excluded Lee's conduct from coverage; yet, it did not do so. We affirm the grant of summary judgment in favor of We Care.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] This fact was included in the trial court's opinion but was not apparent from those portions of the lower court record designated on appeal. Neither party disputes the lower court's statement of the facts. For the purposes of this appeal, we assume that this fact was apparent from the evidence properly before the trial court. M.R.C.P. 56(c).
[2] A wealth of caselaw on the "carrying persons or property for a fee" and similarly worded exclusions is to be found at Randy J. Sutton, Annotation, What Constitutes Use of Automobile "To Carry Persons or Property for Fee" Within Exclusion of Automobile Insurance Policy, 57 A.L.R. 5th 591 (1998).